UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BOND SIMPSON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No.18-cv-00309-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 21 |

Plaintiff Joseph Bond Simpson seeks social security benefits for a combination of mental and physical impairments, including: feet, ankle, and back problems, diverticulitis, diabetes, high blood pressure, gout and bipolar disorder. (Administrative Record ("AR") 126.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 15 & 21.) Because the Administrative Law Judge's ("ALJ") determination that Plaintiff had engaged in substantial gainful activity is supported by substantial evidence, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5, 9.)

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do her previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.*

**PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act on October 31, 2013 alleging a disability onset date of that same date. (AR 29.) His application was denied both initially and upon reconsideration. (*Id.*) Plaintiff then submitted a

written request for a hearing before an ALJ, and on June 2, 2016, a video hearing was held before ALJ James Delphy. (AR 29, 46-90.) A supplemental hearing was scheduled for September 15, 2016 to allow Plaintiff's wife to testify; however, neither Plaintiff, his wife, nor Plaintiff's representative appeared at the supplemental hearing. (AR 29-30.) On October 18, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 29-35.) Plaintiff filed a request for review of the ALJ's decision which was denied on December 13, 2017 making the ALJ's decision the Commissioner's final decision. (AR 1-3.) Plaintiff commenced this action for judicial review of the Commissioner's decision on January 14, 2018, pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE RECORD

The ALJ found Plaintiff not disabled under Sections 216(i) and 223(d) of the Social Security Act, taking into consideration the testimony and other evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 22-34.); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ's analysis, however, stopped at Step One because he found that there was not a continuous 12-month period since the alleged onset date during which Plaintiff had not engaged in substantial gainful activity. (AR 35.)

## DISCUSSION

Plaintiff raises a number of issues on appeal beyond the ALJ's substantial gainful activity determination, including the Plaintiff's prior approved application for disability benefits and the ALJ's failure to consider evidence of his impairments. However, because the substantial gainful activity issue is the threshold—and ultimately, dispositive—issue, the Court's analysis begins there.

**A.  Substantial Gainful Activity**

If a plaintiff can engage in substantial gainful activity, he is not disabled within the meaning of the Social Security Act. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999); 20 C.F.R. § 404.1571. Substantial gainful activity is work activity that is usually done for pay or profit and that involves doing significant physical or mental activities, taking into account the nature of the work, how well it is performed, whether it is performed under special conditions, self-employment, and time spent working. *See* 20 C.F.R. §§ 404.1572-404.1573, 416.972-

416.973. "Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity. We will use your earnings to determine whether you have done substantial gainful activity unless we have information from you, your employer, or others that shows that we should not count all of your earnings." 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1); *see Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001) ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity.").

For self-employed individuals such as Plaintiff the regulations provide that:

> We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements … We determine whether you have engaged in substantial gainful activity by applying three tests. If you have not engaged in substantial gainful activity under test one, then we will consider tests two and three. The tests are as follows:
>
> (i) Test one: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.
>
> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a).

Here, the ALJ found that Plaintiff had engaged in substantial gainful activity under the first test. The ALJ found that Plaintiff's work as a co-owner of a mushroom farm with his wife consisted of "significant services" as defined in section 404.1575(b)(1), which states in relevant

part: "If your business involves the services of more than one person, we will consider you to be rendering significant services if you contribute more than half the total time required for the management of the business, or you render management services for more than 45 hours a month regardless of the total management time required by the business." In finding that Plaintiff's work on the mushroom farm satisfied this requirement the ALJ relied on Plaintiff's 2014 statement to a physician that "my family begs me to stop working, my wife will come out and tell me to come in for dinner, I get argumentative, tell her I can't stop working." (AR 774.) The ALJ concluded that "claimant's statement that his wife, and joint owner of their farm, asks him to stop working in time for dinner, indicates that the claimant was providing 'significant services' at least sufficient to meet this first prong." (AR 33.)

With respect to the second prong, the ALJ noted that substantial income is defined in section 404.1575(c) as net income less impairment related work expenses; however, Plaintiff had not claimed any impairment related work expenses. (AR 33-34.) Although Plaintiff's 2014 earnings were less than the substantial gainful activity threshold, the ALJ found that because he was the "joint owner with his wife, the claimant had substantial control over the payment of and the amount of his earnings withdrawn from the family business" (AR 34) relying on section 1574(b)(3)(ii) which provides that "[w]e will generally consider other information in addition to your earnings if there is evidence indicating that you may be engaging in substantial gainful activity or that you are in a position to control when earnings are paid to you or the amount of wages paid to you." For 2015, Plaintiff's earnings totaled $31,228.00 (AR 248) which the ALJ found "amounts to average monthly earnings of $2,602.33, a figure well in excess of the 2015 monthly substantial gainful activity threshold of $1,090." (AR 34.) *See* 20 C.F.R. § 1574(b)(2)(ii). The ALJ found that although Plaintiff testified that his son later took over the farm as joint owner with his wife, his earnings for 2015 were nonetheless "well above the substantial gainful activity threshold." (AR 34.)

Plaintiff contends that the ALJ erred in finding that he engaged in substantial gainful activity because he actually did not work. The ALJ found Plaintiff's "assertion that he has not worked since his alleged onset date [] inconsistent with the other evidence of record, including

5

[his] earning records, and explicit notations in treatment records indicating that the claimant was working on his mushroom farm during the relevant period." (AR 34.) Substantial evidence supports the ALJ's finding.

First, the ALJ relied on the fact that in 2014 Plaintiff told his doctor that he "can't watch other people work and not work" and that "my family begs me to stop working, my wife will come out and tell me to come in for dinner, I get argumentative, tell her I can't stop working." (AR 773-774.) Plaintiff disavowed these statements at the hearing testifying that the statement "was a bullshit lie conversation between me and the doctor, because I didn't want him feeling bad or sad about me because I'm so crippled up and helpless. So that was a lie to the doctor." (AR 68.) To resolve the conflict between the evidence and Plaintiff's testimony, the ALJ agreed to have a supplemental hearing to allow Plaintiff's wife to testify regarding his work activity. (AR 88.) Plaintiff's representative stated that she believed the wife's testimony would be "essential" to "corroborate his story." (*Id.*) However, neither Plaintiff, his wife, or his representative appeared at the supplemental hearing.

Plaintiff's insistence that the ALJ refused to hold the supplemental hearing to take testimony from he and his wife is not supported by the record. (Dkt. No. 15 at 27:28-28:2.) The ALJ scheduled the supplemental hearing for September 15, 2016. Rather than participate, Plaintiff first sought to have the hearing assigned to a different location and thus judge, then three days before the hearing he (through his representative) requested a Thai interpreter for the hearing (which the ALJ provided), and then just two days before the hearing, Plaintiff's representative submitted correspondence that first sought dismissal of the case and then a few hours later requested that it be continued because her client was not "fully aware" of the ramifications of dismissal, and because she (the representative) had scheduled a visit with her primary care physician the afternoon of the hearing. (AR 207, 211, 215.) Because the hearing had been scheduled at Plaintiff's request and only Plaintiff's wife had to appear, the ALJ went ahead with the hearing, although no one other that the ALJ, the Thai interpreter, and the hearing monitor appeared. (AR 30.)

The ALJ did not error in denying Plaintiff's untimely request for a continuance. *See* 20

C.F.R. § 416.1436(e) (agency must be notified about any request to reschedule the hearing at the "earliest possible opportunity, but not later than 5 days before the date set for the hearing"); 20 C.F.R. § 416.1411 (listing circumstances which establish good cause for missing a deadline (such as to request a continuance) including serious illness, destruction of important records through fire or other accidental cause, and error on the part of the Agency, among others). Even if Plaintiff himself had good cause not to appear, there has been no showing as why Plaintiff's wife and/or his representative did not appear at the scheduled hearing. *See Morales v. Astrue*, 504 F. App'x 592 (9th Cir. 2013) (holding that the ALJ did not err denying untimely request for a continuance at least in part because the plaintiff's representative was present at the hearing and the plaintiff was a non-essential witness).

Second, the ALJ considered the only other evidence Plaintiff offered regarding his testimony that his earlier statements to his doctor had been a lie; namely, an August 17, 2016 note from Plaintiff's doctor that he had a telephone conversation with Plaintiff that day wherein Plaintiff "stated that in previous conversations with me he actually missed led [sic] me out of shame for not having a job. He states that he has not been working since October 2013. (AR 2363.) The ALJ found that the doctor's statement lacked any persuasive force because it was hearsay and simply repeated Plaintiffs' "self-serving statements." (AR 34.) The ALJ also found that it did nothing to address the similar statements Plaintiff had made to other physicians. In particular, the ALJ noted that a May 2016 treatment record stated that "2 months ago, patient was independent with all mobility and ADLs, working on his mushroom farm in Willits." (AR 2181.) "The ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Courts should defer to the ALJ's rational resolution of conflicting evidence and ambiguities in the record. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Thus, the Court defers to the ALJ's decision to give greater consideration to the contemporaneous notes of two treating sources which were consistent with Plaintiff's self-employment earnings, than Plaintiff's *post hoc* disavowal of his prior statements.

Finally, in finding that Plaintiff performed "significant services" the ALJ permissibly

relied on the fact that "as a joint owner with his wife, the claimant had substantial control over the payment of and the amount of his earnings withdrawn from the family business." *See* 20 C.F.S. § 404.1574(b)(3)(ii) ("We will generally consider other information in addition to your earnings if there is evidence indicating that you may be engaging in substantial gainful activity or that you are in a position to control when earnings are paid to you or the amount of wages paid to you."); *see also Byington v. Chater*, 76 F.3d 246, 249–250 (9th Cir. 1996). Plaintiff's complaint that the ALJ "did not fully develop the record" on this point is misplaced. (Dkt. No. 15 at 26:25.) The ALJ provided Plaintiff an opportunity to develop the record through his wife's testimony and she failed to appear at the scheduled hearing as discussed, *supra*. The ALJ considered the available evidence and permissibly resolved evidentiary and credibility issues. Plaintiff essentially requests that the Court reweigh the evidence and reach a different conclusion from that reached by the ALJ. This, of course, the Court may not do. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ.").

\*\*\*

Accordingly, the ALJ's decision that Plaintiff was not disabled because there was no continuous 12-month period since his disability onset date during which he had not engaged in substantial gainful activity is supported by substantial evidence.

### B. Plaintiff's Other Arguments

The Court briefly addresses Plaintiff's three other arguments. First, that the ALJ should have considered whether Plaintiff was entitled to expedited reinstatement of his prior approved application for disability benefits. Given that Plaintiff explicitly elected not to seek expedited reinstatement when he applied in 2013, this argument is a nonstarter. (AR 223 ("I do not want to file for an expedited reinstatement at this time.").) Second, Plaintiff suggests that there were procedural improprieties regarding his hearing because he had a video hearing and because he was assigned an ALJ from an "overburdened hearing office." (Dkt. No. 15 at 31:13.) However, Plaintiff cites no legal authority for the proposition that a video hearing was improper and he had ample opportunity to raise an objection to the video hearing when he was first notified of it in

October 2014. (AR 159-161.) *See* 20 C.F.R. § 404.936 ("[i]f you object to appearing by video teleconferencing, you must notify us in writing within 30 days after the date you receive the notice."). Likewise, Plaintiff does not cite to any authority for the proposition that he was in some way prejudiced by having his case assigned to an ALJ based in Los Angeles as opposed to Santa Rosa. "ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). Finally, Plaintiff suggests that the ALJ erred in failing to make a disability determination, but the ALJ was not required to do so because the inquiry did not proceed beyond the first step. *See* 20 C.F.R. § 404.1520 ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Accordingly, none of Plaintiff's arguments support a finding that the ALJ's decision was not supported by substantial evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

This Order disposes of Docket Nos. 15 and 21.

**IT IS SO ORDERED.**

Dated: May 14, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge